**CAUSE NO. 24-20112**

———————————————

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

———————————————

**DONNIE RAY PEARSON,**
**Petitioner - Appellant**

v.

**ERIC GUERRERO, DIRECTOR,**
**TEXAS DEPARTMENT OF CRIMINAL JUSTICE,**
**CORRECTIONAL INSTITUTIONS DIVISION**
**Respondent - Appellee**

———————————————

**Appealed from the United States District Court**
**For the Southern District of Texas**
**Houston Division**
**Number 4:21-cv-03269**

———————————————

**APPELLANT'S MERITS BRIEF**

———————————————

**Josh Schaffer**
**State Bar No. 24037439**

**1021 Main, Suite 1440**
**Houston, Texas 77002**
**(713) 951-9555**
**(713) 951-9854 (facsimile)**
**josh@joshschafferlaw.com**

**Attorney for Appellant**
**DONNIE RAY PEARSON**

**ORAL ARGUMENT REQUESTED**

## <u>CERTIFICATE OF INTERESTED PERSON</u>

Counsel of record in Donnie Ray Pearson v. Eric Guerrero, number 24-20112, certifies that Donnie Ray Pearson has an interest in the outcome of this case so the judges of this court may evaluate possible disqualification or recusal.

/s/ Josh Schaffer
Josh Schaffer

Attorney for Appellant
DONNIE RAY PEARSON

## <u>STATEMENT CONCERNING ORAL ARGUMENT</u>

Oral argument will help the Court decide whether to recognize the doctrine of implied juror bias in the context of a claim that trial counsel was ineffective in failing to challenge or strike a potential juror who had been a victim of the same crime that appellant was charged with committing.

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSON ................................................. i

STATEMENT CONCERNING ORAL ARGUMENT ................................. i

TABLE OF AUTHORITIES ............................................................. iv

STATEMENT OF JURISDICTION................................................... 1

STATEMENT OF THE ISSUE ........................................................ 1

STATEMENT OF THE CASE........................................................ 1

    A.    Course of Prior Proceedings.......................................... 1

    B.    Statement of Facts ........................................................ 2

SUMMARY OF THE ARGUMENT ................................................ 7

STANDARD OF FEDERAL HABEAS CORPUS REVIEW ......................... 9

ARGUMENT ............................................................................. 11

    APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT
    TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE
    COUNSEL UNREASONABLY FAILED TO CHALLENGE FOR
    CAUSE OR EXERCISE A PEREMPTORY STRIKE ON A VENIRE
    MEMBER WHO WAS MOLESTED AS A CHILD AND SERVED
    ON THE JURY.................................................................... 11

    A.    Standard of Review ...................................................... 11

    B.    Analysis ..................................................................... 13

CONCLUSION ........................................................................ 26

CERTIFICATE OF SERVICE ....................................................... 27

**Page**

CERTIFICATE OF COMPLIANCE .................................................................... 27

## TABLE OF AUTHORITIES

### Cases                                                                          Page

Adams v. Texas, 448 U.S. 38 (1980)............................................................ 14,17,23

Alaniz v. State, 937 S.W.2d 593 (Tex. App.—San Antonio 1996, no pet.) 16-17,24

Buck v. Davis, 137 S.Ct. 759 (2017) ...............................................    11

Burton v. Johnson, 948 F.2d 1150 (10th Cir. 1991) .................................. 9,20,22,24

Catalan v. Cockrell, 315 F.3d 491 (5th Cir. 2002) ............................................    10

Delrio v. State, 840 S.W.2d 443 (Tex. Crim. App. 1992) ............................... 14,24

Ex parte Dietrich, 2016 WL 325284, No. WR-84,163-01 (Tex. Crim. App. 2016) ................................................................................. 16,24

Ex parte Smithers, 2011 WL 1168423, No. AP-76,506 (Tex. Crim. App. 2011) ................................................................................. 16,24

Fields v. Brown, 503 F.3d 755, 763 (9th Cir. 2007) (*en banc*) ........................    22

Franklin v. State, 138 S.W.3d 351 (Tex. Crim. App. 2004)............................    14

Hunley v. Godinez, 975 F.2d 316 (7th Cir. 1992) .......................................... 9,21,24

Irvin v. Dowd, 366 U.S. 717 (1961) ...................................................    22

Jackson v. United States, 395 F.2d 615 (D.C. Cir. 1968)............................... 9,22,24

Kimmelman v. Morrison, 477 U.S. 365 (1986)..........................................    23

Kyles v. Whitley, 514 U.S. 419 (1995) ................................................    13

Lindh v. Murphy, 521 U.S. 320 (1997) ................................................    10

McMann v. Richardson, 397 U.S. 759 (1970) ................................................    12

**Page**

Miller-El v. Cockrell, 537 U.S. 322 (2003) ....................................... 10

Montez v. State, 824 S.W.2d 308 (Tex. App.—San Antonio 1992, no pet.) ... 16

Mu'Min v. Virginia, 500 U.S. 415 (1991) ......................................... 14,23

Pearson v. State, 2012 WL 3765000, No. 14-11-00041-CR (Tex. App.—
    Houston [14th Dist.] 2012, pet. ref'd) ........................................ 1

Powell v. Alabama, 287 U.S. 45 (1932) ........................................... 11

Reynolds v. State, 294 S.W.2d 108 (Tex. Crim. App. 1956) ..................... 14,24

Richards v. Quarterman, 566 F.3d 553 (5th Cir. 2009) ......................... 11

Shaver v. State, 280 S.W.2d 740 (Tex. Crim. App. 1955) ....................... 14,18,24

Smith v. Phillips, 455 U.S. 209 (1982) ............................................ 22-23

Solis v. Cockrell, 342 F.3d 392 (5th Cir. 2003) ................................. 9,21

State v. Garza, 143 S.W.3d 144 (Tex. App.—San Antonio 2004, pet. ref'd) .. 16,24

Strickland v. Washington, 466 U.S. 668 (1984) ........................... *passim*

Turner v. United States, 137 S.Ct. 1885 (2017) ................................. 25

United States v. Abreu, 2023 WL 234766 (5th Cir. 2023) ....................... 22

United States v. Allsup, 566 F.2d 68 (9th Cir. 1977) .......................... 9,21,24

United States v. Dominguez Benitez, 542 U.S. 74 (2004) ...................... 25

United States v. Eubanks, 591 F.2d 513 (9th Cir. 1979) ....................... 9,21,24

United States v. Greer, 285 F.3d 158 (2d Cir. 2002) ........................... 9,21

United States v. Nell, 526 F.2d 1223 (5th Cir. 1976) .......................... 22

**Page**

United States v. Scott, 854 F.2d 697 (5th Cir. 1988).............................. 17

United States ex rel. De Vita v. McCorkle, 248 F.2d 1 (3d Cir. 1957)
    (*en banc*) ......................................................................... 9,21,24

Virgil v. Dretke, 446 F.3d 598 (5th Cir. 2006) ........................................ 9,20,22-24

Williams v. Taylor, 529 U.S. 362 (2000) ........................................... 10

Wilson v. Sellers, 138 S.Ct. 1188 (2018) ........................................... 11

Winn v. State, 871 S.W.2d 756 (Tex. App.—Corpus Christi 1993, no pet.) ... 16,24

## Constitutional Provisions

U.S. CONST. amend. VI............................................................... 11

U.S. CONST. amend. XIV.............................................................. 11

## Federal Statutory Provisions

28 U.S.C. § 1291 ..................................................................... 1

28 U.S.C. § 2253(c)(1) .............................................................. 1

28 U.S.C. § 2254 ..................................................................... 1

28 U.S.C. § 2254(d) ................................................................. 10

28 U.S.C. § 2254(d)(1) ............................................................. 19

28 U.S.C. § 2254(d)(2) ............................................................. 18

28 U.S.C. § 2254(e)(1) ............................................................. 23

## **State Statutory Provisions**                     **Page**

TEX. CRIM. PROC. CODE arts. 35.16(a)(9) (West 2012) .................................... 14,17

TEX. CRIM. PROC. CODE arts. 35.16(c)(2) (West 2012) .................................... 14,17

## STATEMENT OF JURISDICTION

Appellant appeals from the denial of federal habeas corpus relief. The district court had jurisdiction under 28 U.S.C. § 2254. It denied relief and a certificate of appealability (COA) on February 21, 2024 (ROA.185-223). This Court granted a COA on October 29, 2024. It has jurisdiction under 28 U.S.C. §§ 1291 & 2253(c)(1).

## STATEMENT OF THE ISSUE

Whether Appellant was denied his Sixth Amendment right to the effective assistance of counsel where counsel failed to challenge for cause or use a peremptory strike on a potential juror who was sexually abused as a child and served on the jury.

## STATEMENT OF THE CASE

### A.    Course of Prior Proceedings

Appellant pled not guilty to super-aggravated sexual assault of a child in cause number 1286988 in the 185th District Court of Harris County, Texas. A jury convicted and assessed punishment at life imprisonment without parole on January 14, 2011 (ROA.371-72). Neal Davis, III, represented him at trial.

The Fourteenth Court of Appeals of Texas affirmed appellant's conviction in an unpublished opinion issued on August 7, 2012 (ROA.2827-2842). The Texas Court of Criminal Appeals (CCA) refused discretionary review on January 9, 2013. Pearson v. State, 2012 WL 3765000, No. 14-11-00041-CR (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). Present counsel represented him on appeal.

Appellant filed a state habeas corpus application on April 7, 2014 (ROA.5594-

5653, 5768-5785).  The trial court adopted the State's proposed findings of fact and conclusions of law *verbatim* and recommended that relief be denied on December 3, 2020 (ROA.5750-5763).  The CCA denied relief without written order in cause number WR-90,524-01 on October 6, 2021 (ROA.2949).[1]  Present counsel represented him in the state habeas proceeding.

Appellant filed a federal habeas corpus petition in cause number 4:21-cv-03269 in the United States District Court for the Southern District of Texas on October 7, 2021 (ROA.5-14).  United States District Judge Andrew S. Hanen denied relief and a COA on February 21, 2024 (ROA.185-223).  Appellant timely filed notice of appeal on March 19, 2024 (ROA.224-25).  Present counsel represented appellant in the district court.

United States Circuit Judge Andrew S. Oldham granted appellant's motion for a COA in part and denied it in part on October 29, 2024.

## B.    Statement of Facts[2]

The indictment alleged that, on July 7, 2009, appellant penetrated the vagina of L.C., a child younger than six years who was not his spouse, with an unknown object, and that he caused her vagina to contact his penis (ROA.240).

---

[1] Judge Newell would have granted habeas corpus relief (ROA.2949).

[2] Resolution of the issue on which the Court granted a COA does not turn on the evidence presented at trial, so appellant is presenting a brief summary of the facts.  For a more detailed statement of facts, the Court can refer to appellant's brief in support of the motion for a COA.

L.C.'s mother, Aimee Carroll-Benavides, and appellant dated in high school (ROA.624). They conceived a daughter but broke up before her birth (ROA.626). Carroll-Benavides had three more children not by appellant, including L.C., born on July 9, 2007 (ROA.624-25). Appellant married another woman and had three children (ROA.625-28). They reunited in December of 2008 and moved in together, eventually with all seven of their children (ROA.625, 627, 631, 634).

L.C. began throwing tantrums, and her behavior worsened (ROA.634-35, 653, 835, 1233-34, 1238, 3639, 3643). She bit her arm and pulled out her hair (ROA.653-54, 665-67, 2315-30, 3641). She woke up three times with a busted lip and once with a scrape on her head while in her crib; another times, she had bruises shaped like the bars of her crib (ROA.654-55, 867). Carroll-Benavides thought that she was injuring herself—and did not believe that appellant was responsible—but took her for medical treatment each time she awoke with a busted lip (ROA.656, 671, 842, 845, 849). A doctor concluded that she was "just a bad kid" with behavioral problems (ROA.673).[3] Carroll-Benavides speculated that L.C. was having seizures, hitting her face against the crib, and causing her own injuries (ROA.658).

By June of 2009, when appellant's children moved into the house, four girls,

---

[3] A pediatric nurse who examined L.C. several times testified that Carroll-Benavides reported in April of 2009 that L.C. was biting herself and banging her head when she did not get her way; that this behavior is normal for children that age; and that it can be the result of a behavioral issue or abuse (ROA.3503, 3514-17). The hair pulling could be the result of a hormonal or chemical imbalance, and the injuries could be the result of night terrors or seizures (ROA.3546-47, 3560-61).

three boys, and two adults were living together (ROA.676-77). Appellant became the primary babysitter because they could not afford day care (ROA.674-75).

According to Carroll-Benavides, L.C. did not have any injuries or blood in her diaper when she went to bed on July 6, 2009 (ROA.691, 893-94). Carroll-Benavides did not hear anything that night (ROA.897). July 7 was the first day that appellant babysat the children alone (ROA.689-91, 891).

Two of the older daughters awoke L.C. in the late morning of July 7 and found a bruise on her head (ROA.1242-45, 3613-14). She cried and said that her head hurt (ROA.3615). Appellant sent Carroll-Benavides a text message at noon that L.C. had a knot on her head (ROA.695, 902). She called him immediately, and he said that one of the boys had hit L.C. on the head with a toy (ROA.696, 903). He sent a text message at 1:58 p.m. asking her to call him and another one at 2:01 p.m. stating that the bruise had worsened and there was a knot on the back of L.C.'s head (ROA.697, 904). The older daughters found blood in L.C.'s diaper and told appellant (ROA.1245-47, 3615-16). When Carroll-Benavides called again on her way home from work, he said blood was in L.C.'s diaper (ROA.698).

Carroll-Benavides arrived and found L.C.'s head swollen, lopsided, and bruised (ROA.702-03). She took L.C. to the emergency room, where staff said the injuries were the result of sexual assault (ROA.706, 914). L.C. spent several days in the hospital (ROA.721-22). Her head swelled, and bruises became more

prominent. Carroll-Benavides gave the police the bloody diaper and consent to search the house (ROA.740, 747).

A sexual assault nurse examiner examined L.C. and discovered various physical injuries, including tears of the hymen with bleeding and bruising and a tear to the anal tissue, which could have resulted from something other than a sexual assault but was more concerning in light of the other injuries (ROA.4023-25, 4035-39, 4045-46, 4077, 4081). The injuries to her private parts possibly were caused by an adult penis, finger, or unknown object (ROA.4046-49, 4079).[4]

Appellant went to the police station for a videotaped interview on July 8, 2009 (ROA.1298-99, 1301, 1309, 2486). He ended the interview early and was taken to jail (ROA.1309, 3963-64).

The police searched the house (ROA.1316). It was messy; clothes were scattered; the scene was not secured; and the evidence could have been contaminated before collection (ROA.3973-75, 3979, 3982). Carroll-Benavides occasionally put the children's dirty clothes in the hamper that she and appellant used (ROA.924). There is a high risk of DNA contamination if evidence is not collected properly, especially if items are commingled (ROA.3994).

DNA analysis demonstrated that L.C.'s DNA was on her vaginal and anal

---

[4] L.C. could have inserted an object into her vagina and accidentally caused her injuries (ROA.4072-73).

swabs, but there was no sperm (ROA.4131-32).  Her DNA was in the blood on her

diapers, but there was no semen (ROA.4132-33).  A mixture of her DNA and

appellant's DNA was on a towel, which could have been from saliva, skin cells, or

blood (ROA.4138-41).  His DNA was in semen on another towel (ROA.4141-42).

DNA on a t-shirt could have been from L.C. and him (ROA.4146).  L.C.'s DNA was

in blood on her pink hoodie (ROA.4150-51).  Another stain was inconclusive for

semen, but DNA in the non-sperm fraction was consistent with L.C.'s and his

(ROA.4151-52).  The analyst did not know if this stain was semen, but it contained

appellant's DNA mixed with L.C.'s (ROA.4154).  Her DNA also was in the blood

on the outside front near the crotch area of his shorts (ROA.4154-55).  Her DNA

was in a presumptive blood stain on his jeans, and his DNA was in another stain

(ROA.4164).  Her DNA was in a presumptive blood stain on the inside of his

underwear, and his DNA could not be excluded (ROA.4167-68).  Another test on

the pink hoodie confirmed that the stain was semen, but there was not enough DNA

to obtain a profile (ROA.4170).  When there is a mixture of DNA, one cannot

determine if the stains were deposited simultaneously (ROA.4204).

The lead detective admitted that the sexual assault examination did not

implicate appellant, and he did not know if the DNA evidence was contaminated

(ROA.4012-13).

Appellant testified that he did not hurt or sexually assault L.C. and did not

know what happened to her (ROA.4615, 4688).  He could have had sex with Carroll-Benavides and wiped himself with the pink hoodie (ROA.4689).

The prosecutor argued that appellant grabbed L.C., covered her mouth, and beat her, tearing her private parts in the process (ROA.4722).  She argued that an adult caused the injuries (ROA.4723).  Defense counsel argued that L.C. could have injured herself during a tantrum or in her sleep (ROA.4703).  Appellant's semen was on the hoodie because he cleaned himself with it after having sex with Carroll-Benavides (ROA.4705).  The scene was unsecured and contaminated (ROA.4705, 4709).  No one could determine what caused L.C.'s injuries or whether they were accidental or intentional (ROA.4710-11).  Her blood could have been transferred to his clothes innocently on another occasion (ROA.4714).

The jury convicted appellant of super-aggravated sexual assault of a child and assessed punishment at life in prison (ROA.364, 369).[5]

## SUMMARY OF THE ARGUMENT

During the voir dire stage, the court said that a note from a potential juror stated, "I think I can be fair but I was molested as a child.  I didn't want to speak up in front of everyone."  Defense counsel did not ask to question her, challenge her for cause, or use a peremptory strike on her.  She served on the jury.  When the clerk called the jurors' names, an unidentified female juror said, "Why did they pick me?

---

[5] The court instructed the jury that appellant was not eligible for parole (ROA.366).

. . . Objection.  Can I object myself?"

Appellant alleged on habeas that trial counsel was ineffective in failing to challenge for cause or use a peremptory strike on the juror who was molested as a child and served on the jury.  Counsel did not remember the trial court mentioning the note.  Had he heard the court announce that the juror was molested as a child, he would have challenged her for cause or exercised a peremptory strike on her.  He did not assert any strategic reason for leaving her on the jury.

The state habeas court found that counsel would have challenged or struck the juror had he heard the trial court state that she had been molested.  But it concluded that he was not ineffective because appellant failed to prove that the juror was biased or challengeable for cause.

The federal district court deferred to the state court decision and denied relief.  But it acknowledged that this Court has not settled the issue of whether the presence of an *impliedly* biased juror on a jury causes prejudice to a defendant.  It concluded that the record did not establish that she was *actually* biased, and it refused to consider if she was *impliedly* biased.

The issue before this Court turns on the prejudice prong of the ineffective assistance analysis.  If the juror were not biased *at all*, there would be no theoretically reasonable probability of a different outcome had counsel removed her from the jury.  And if she were *actually* biased as a matter of law, a reasonable probability of a

different outcome would be certain.  See Virgil v. Dretke, 446 F.3d 598, 611-13 (5th Cir. 2006).  But because counsel failed to question her when she reported a history of abuse, the record does not establish whether she was *actually* biased or *impliedly* biased.  This Court has observed that *implied bias exists even when a juror in good faith claims that she is not biased*—and specifically includes jurors who were victims of the same type of crime as alleged.  See Solis v. Cockrell, 342 F.3d 392, 398-99 & n.42 (5th Cir. 2003).  And other federal circuits have recognized and applied the doctrine of implied juror bias.[6]

This Court should hold that appellant suffered prejudice when counsel failed to challenge or strike an impliedly biased juror who was a victim of the same crime as alleged.  It should reverse the judgment of the district court because the state court unreasonably applied clearly established federal law as determined by the Supreme Court, and its decision was based on an unreasonable determination of the facts.

## STANDARD OF FEDERAL HABEAS CORPUS REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal habeas court must defer to the state court decision unless it was contrary to, or involved an unreasonable application of, clearly established federal law, as

---

[6] United States v. Greer, 285 F.3d 158, 172 (2d Cir. 2002); United States ex rel. De Vita v. McCorkle, 248 F.2d 1, 8 (3d Cir. 1957) (*en banc*); Hunley v. Godinez, 975 F.2d 316, 319 (7th Cir. 1992); United States v. Eubanks, 591 F.2d 513, 517 (9th Cir. 1979); United States v. Allsup, 566 F.2d 68, 71 (9th Cir. 1977); Burton v. Johnson, 948 F.2d 1150, 1159 (10th Cir. 1991); Jackson v. United States, 395 F.2d 615, 617-18 (D.C. Cir. 1968).

determined by the Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

A state court decision is contrary to Supreme Court precedent if its conclusion is opposite to that reached by the Supreme Court on a question of law or it confronts facts that are materially indistinguishable from relevant Supreme Court precedent and arrives at the opposite result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a case or it unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply. Id. at 408, 413. The federal court must decide whether the state court's application of the law was objectively unreasonable. Id. at 409.

This Court reviews a federal district court's findings of fact for clear error and conclusions of law de novo. Catalan v. Cockrell, 315 F.3d 491, 492 (5th Cir. 2002).

The AEDPA sets forth "a highly deferential standard for evaluating state-court rulings." Lindh v. Murphy, 521 U.S. 320, 333 n.7 (1997). However, deference does not imply abandonment or abdication of judicial review, nor does it preclude relief. Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); see also Williams, 529 U.S. at 377 (AEDPA "directs federal courts to attend to every state-court judgment with utmost care, but it does not require them to defer to the opinion of every reasonable state-court judge on the content of federal law"). Indeed, in several cases, both the

10

Supreme Court and this Court, in applying the AEDPA, have concluded that a state court unreasonably decided that counsel was effective.  See, e.g., Buck v. Davis, 137 S.Ct. 759 (2017); Richards v. Quarterman, 566 F.3d 553 (5th Cir. 2009).

When the highest court of the state denies relief without providing any written reasons, a federal habeas court must "look through" to the decision of the last state court that provided reasons for denying relief unless there is convincing evidence that the higher state court most likely relied on different grounds than the lower court's decision.  Wilson v. Sellers, 138 S.Ct. 1188 (2018).  When a federal court "looks through" to the lower state court's reasoned decision, the federal court should not speculate about what possible ground the highest state court "could have" relied on in denying relief; instead, the federal court should assess whether the *actual* grounds relied on by the lower state court were contrary to, or an unreasonable application, of Supreme Court precedent.  Id. at 1195-97.

## ARGUMENT

**APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL UNREASONABLY FAILED TO CHALLENGE FOR CAUSE OR EXERCISE A PEREMPTORY STRIKE ON A VENIRE MEMBER WHO WAS MOLESTED AS A CHILD AND SERVED ON THE JURY.**

**A.    Standard of Review**

Appellant had a right to the effective assistance of counsel at trial.  U.S. CONST. amends. VI & XIV; Powell v. Alabama, 287 U.S. 45 (1932).  Counsel must

11

act within the range of competence demanded of counsel in criminal cases. <u>McMann v. Richardson</u>, <mark>397 U.S. 759</mark> (1970).

In <u>Strickland v. Washington</u>, <mark>466 U.S. 668</mark> (1984), the Supreme Court addressed the federal constitutional standard to determine whether counsel rendered reasonably effective assistance. The defendant first must show that counsel's performance was deficient—that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense—that counsel's errors were so serious as to deprive the defendant of a fair trial with a reliable result.

The defendant must identify specific acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The reviewing court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance. Ultimately, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, <mark>466 U.S. at 694</mark>.

Appellant need not show a reasonable probability that, but for counsel's errors, he would have been acquitted, received a mistrial as a result of a deadlocked

jury, or had his conviction reversed on appeal. Rather, the issue is whether he received a fair trial resulting in a verdict worthy of confidence. See Kyles v. Whitley, 514 U.S. 419, 434 (1995).

## B. Analysis

> **Counsel unreasonably failed to challenge for cause or exercise a peremptory strike on a venire member who was molested as a child and served on the jury.**

After the *voir dire* examination, the lawyers approached the bench to make their challenges for cause (ROA.537). As they discussed with the court which venire members they could agree to excuse, the court interrupted (ROA.540):

> Okay. I have just received a note from the clerk. It says -- it's Juror No. 27. It says: I think I can be fair but I was molested as a child. I didn't want to speak up in front of everyone. I just want y'all to know that. Says they can be fair, so I don't know how you want to handle that. And I will make this a part of the record.

The record does not reflect that any of the lawyers reacted to the court's comment regarding the note from venire member 27, Julie Nickell.[7] Counsel did not ask to call her to the bench for questioning. He did not challenge her for cause or exercise a peremptory strike on her (ROA.351, 537-47). After the court announced the names of the jurors, including Nickell, an unidentified female juror said, "Why did they pick me? . . . Objection. Can I object myself?" (ROA.548). The record does not

---

[7] Despite the court's promise to do so, the note was not made part of the Clerk's Record.

13

reflect the identity of the juror, but the totality of the circumstances points toward it being Nickell. Counsel did not object to her serving on the jury (ROA.348, 547-48).

Appellant alleged on state habeas that counsel performed deficiently in failing to challenge Nickell for cause or use a peremptory strike on her. The Sixth Amendment guarantees the right to an impartial jury, which includes adequate *voir dire* to identify unqualified jurors and intelligently exercise peremptory challenges. Mu'Min v. Virginia, 500 U.S. 415, 431 (1991); Franklin v. State, 138 S.W.3d 351, 354 (Tex. Crim. App. 2004). The defense may challenge for cause a venire member who "has a bias or prejudice in favor of or against the defendant" and who "has a bias or prejudice against any of the law applicable to the case on which the defense is entitled to rely, either as a defense to some phase of the offense for which the defendant is being prosecuted or as a mitigation thereof or of the punishment therefore." Tex. Crim. Proc. Code arts. 35.16(a)(9) & (c)(2) (West 2012). A juror is biased if his "views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Adams v. Texas, 448 U.S. 38, 45 (1980). "The presence of one partial juror on a jury destroys the impartiality of the body, and renders it partial." Shaver v. State, 280 S.W.2d 740, 742 (Tex. Crim. App. 1955).[8]

---

[8] See also Delrio v. State, 840 S.W.2d 443, 445 (Tex. Crim. App. 1992) ("a single partial juror will vitiate a conviction"); Reynolds v. State, 294 S.W.2d 108, 110 (Tex. Crim. App. 1956) ("One improper juror destroys the integrity of a verdict.").

Counsel provided an affidavit in the state habeas proceeding. He reviewed the record and spoke to the jury consultant who helped him select the jury, but he did not remember the trial court mentioning Nickell's note and believed that he did not hear the court mention it (ROA.5672). He reviewed his notes from *voir dire* and did not see any reference to a venire member being molested. Importantly, **had he heard the court announce that Nickell had been molested as a child, he would have challenged her for cause or, if the challenge were denied, exercised a peremptory strike on her** (ROA.5672). He did not assert any strategic reason for leaving Nickell on the jury.[9] The state court found counsel's affidavit credible and found that he would have challenged or struck her from the jury had he heard the trial court state that she had been molested (ROA.5751-52).

Nickell should not have served on the jury because she was molested as a child. Had appellant been charged with virtually any offense other than sexually assaulting a child, that disclosure arguably would not have rendered her biased. However, based on the charged offense, her prior experience gave her a bias or prejudice against appellant because her views likely prevented or substantially impaired the performance of her duties in accordance with her instructions and oath.

---

[9] During the entire *voir dire* examination, the record reflects that Nickell spoke only once in response to a question from a lawyer, when she told the prosecutor that she believes that the primary reason to send someone to prison is for punishment (ROA.497). That answer alone would not have supported a strategic reason for counsel to leave her on the jury, especially in light of her disclosure that she was molested as a child.

It is immaterial that the court stated that her note read, "I *think* I can be fair" (emphasis added). That unchallenged assertion did not unequivocally establish that she *could* be fair, merely that she *thought* she could be fair. And she may not have retained that belief had counsel subjected her to individual questioning.

Counsel performed deficiently in failing to challenge Nickell for cause or exercise a peremptory strike on her. See State v. Garza, 143 S.W.3d 144, 149-50 (Tex. App.—San Antonio 2004, pet. ref'd) (counsel ineffective in failing to challenge biased venireman for cause or exercise peremptory strike where omission was inadvertent and not strategic);[10] Ex parte Smithers, 2011 WL 1168423, No. AP-76,506 (Tex. Crim. App. 2011) (unpublished) (counsel ineffective in failing to object properly to two veniremen); Ex parte Dietrich, 2016 WL 325284, No. WR-84,163-01 (Tex. Crim. App. 2016) (unpublished) (counsel ineffective in failing to preserve *voir dire* error); cf. Winn v. State, 871 S.W.2d 756, 762-63 (Tex. App.—Corpus Christi 1993, no pet.) (counsel ineffective in failing to preserve *voir dire* error regarding biased venireman, on whom he exercised peremptory strike, where objectionable juror served); Montez v. State, 824 S.W.2d 308, 310 (Tex. App.—San Antonio 1992, no pet.) (counsel ineffective in failing to preserve error after court denied challenge for cause of biased venireman); Alaniz v. State, 937 S.W.2d 593,

---

[10] This deficient conduct in Garza, by itself, was sufficient to cause prejudice and warrant a new trial. 143 S.W.3d at 150-51.

595-96 (Tex. App.—San Antonio 1996, no pet.) (counsel ineffective in failing to notify court that it inadvertently seated juror whom it had excused for bias).  Counsel admitted that no sound strategy justified this omission.  Indeed, he would have challenged Nickell had he known about her bias.

The state court found that appellant failed to prove that Nickell was biased against him or that she was challengeable for cause (ROA.5752).  It ignored that counsel admitted that he would have used a peremptory strike on her had he heard the judge announce that Nickell was molested as a child (ROA.5672).  It also failed to consider that her experience as a child victim of sexual abuse gave her a bias or prejudice against appellant—who was charged with sexually assaulting a child—because her views likely prevented or substantially impaired the performance of her duties in accordance with her instructions and oath.  See TEX. CRIM. PROC. CODE arts. 35.16(a)(9) & (c)(2) (West 2012); Adams, 448 U.S. at 45.  It is immaterial that the court stated that her note read, "I think I can be fair."  That unchallenged assertion did not unequivocally establish that she *could* be fair, merely that she *thought* she could be fair.  That a juror asserts that she thinks she can be fair in spite of her bias does not mean that she is unbiased.  United States v. Scott, 854 F.2d 697, 698-99 (5th Cir. 1988) (district court erred in denying motion for new trial based on service of impliedly biased juror who decided for himself that he could be fair).  Counsel bears responsibility for the absence of additional detail regarding Nickell's prior

experience and bias in this type of case because he failed to call her to the bench to question her in private and further develop the issue for a challenge for cause.

Reasonably competent counsel would have asked the court to call Nickell to the bench to question her about the impact of her sexual abuse on her ability to serve as a juror in a child sexual assault case. Had she admitted that she could not be fair and impartial, the court would have granted a challenge for cause. Had it denied a challenge on that record, an appellate court probably would have reversed the conviction based on an actually biased juror. Even had she asserted that she could be fair and impartial despite her prior experience, counsel would have used a peremptory strike on her. *Either way, she would not have served on the jury.* "The presence of one partial juror on a jury destroys the impartiality of the body, and renders it partial." Shaver, 280 S.W.2d at 742.

The state court found that counsel did not perform deficiently in failing to challenge Nickell for cause or exercise a peremptory strike on her (ROA.5752). This finding constitutes an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d)(2). It ignored counsel's admission that he would have struck her had he heard that she was molested and had the court denied a challenge for cause. The State offered no evidence to impeach, rebut, undermine, or discredit counsel's crucial admission; and the court found his affidavit to be credible.

Moreover, the state court ignored a mountain of precedent establishing that

counsel performed deficiently in this regard.  See cases cited supra.  This finding also constitutes an unreasonable application of clearly established federal law as determined by the Supreme Court.  See 28 U.S.C. § 2254(d)(1).  Importantly, even had the trial court not erred in denying a challenge for cause to Nickell, counsel would have used a peremptory strike on her, meaning that a person who was sexually abused as a child would not have served on the jury.  That should be all the prejudice necessary to grant relief.

The record does not support—and directly contradicts—the state court's findings regarding Nickell.  The district court erred in deferring to these unreasonable findings.  However, it acknowledged that this Court has not settled the issue of whether the presence of an impliedly biased juror on a jury causes prejudice to a defendant (ROA.200).  Judge Oldham granted a COA so this Court can resolve this important issue.

The district court applied the wrong legal test to resolve this issue.  It analyzed only whether Nickell was actually biased.  But appellant never raised an independent constitutional claim of juror bias.  Instead, the issue presented throughout the state and federal habeas proceeding is whether trial counsel was ineffective in failing to remove Nickell from the jury during voir dire.  The district court failed to analyze whether counsel performed deficiently in failing to remove her or whether appellant was prejudiced by that omission.  Instead, it concluded that the record did not

19

establish that she was *actually* biased, and it refused to consider if she was *impliedly* biased because this Court has not yet acknowledged that legal doctrine (ROA.200-02).

There can be no doubt that counsel performed deficiently in failing to remove Nickell from the jury because he admitted—*and the state court found credible*—that he did not have a strategic reason for failing to challenge or strike her and that he would have done so had he heard that she was molested as a child.  Therefore, the issue before this Court ultimately turns on the prejudice prong of the Strickland analysis.  And that is where the doctrine of actual-versus-implied juror bias enters the picture.  If Nickell were not biased *at all*, there would be no theoretically reasonable probability of a different outcome had counsel removed her from the jury.  Any other equally unbiased juror theoretically also would have voted to convict appellant.  And if Nickell were *actually* biased as a matter of law, a reasonable probability of a different outcome would be certain.  See Virgil v. Dretke, 446 F.3d 598, 611-13 (5th Cir. 2006) (federal habeas relief warranted under AEDPA standard where counsel ineffective in failing to challenge actually biased venirepersons).

But because counsel failed to follow up with individual questioning of Nickell at the bench when the trial court notified him that she reported a history of abuse, the record failed to establish whether she was *actually* biased or merely *impliedly* biased.  That omission rests squarely on trial counsel's shoulders, not appellant's.

Critically, this Court has observed that *implied bias exists even when a juror in good faith claims that she is not biased*—and specifically includes jurors who were victims of the same type of crime as alleged.  See Solis v. Cockrell, 342 F.3d 392, 398-99 & n.42 (5th Cir. 2003).

Other federal circuits have recognized and applied the doctrine of implied juror bias.  See Hunley v. Godinez, 975 F.2d 316, 319 (7th Cir. 1992) ("courts have presumed bias in cases where the prospective juror has been the victim of a crime or has experienced a situation similar to the one at issue in the trial") (collecting and citing cases where courts granted relief based on implied juror bias); United States v. Greer, 285 F.3d 158, 172 (2d Cir. 2002) ("[W]e have cautioned that automatically presumed bias deals mainly with jurors who are related to the parties *or who were victims of the alleged crime itself*.") (internal quotation marks omitted; emphasis added); United States ex rel. De Vita v. McCorkle, 248 F.2d 1, 8 (3d Cir. 1957) (*en banc*) (in robbery trial, court presumed bias of juror who had been victim of robbery); United States v. Eubanks, 591 F.2d 513, 517 (9th Cir. 1979) (in heroin conspiracy trial, court presumed bias of juror whose sons were imprisoned for heroin-related crimes); United States v. Allsup, 566 F.2d 68, 71 (9th Cir. 1977) (court presumed bias of jurors who worked in bank that defendant was charged with robbing); Burton v. Johnson, 948 F.2d 1150, 1159 (10th Cir. 1991) (in murder trial where defense was battered wife syndrome, court presumed bias of juror who was

21

involved in abusive family situation at time of trial); Jackson v. United States, 395 F.2d 615, 617-18 (D.C. Cir. 1968) (court presumed bias of juror who had been participant in "love-triangle" analogous to one at issue in trial).

In Virgil, this Court favorably discussed its decision in United States v. Nell, which ordered a new trial while noting that "[d]oubts about the existence of actual bias should be resolved against permitting the juror to serve, unless the prospective panelist's protestation of a purge of the preconception is positive, not pallid." 526 F.2d 1223, 1230 (5th Cir. 1976); see also Virgil, 446 F.3d at 606-07.  That is because the law mandates that the juror be willing to lay aside her preconceptions.  Irvin v. Dowd, 366 U.S. 717, 723 (1961).  Where neither counsel nor the trial court asks the potential juror if she could set aside her preconceptions—and there is no record evidence that she in fact did so—counsel's failure to challenge or strike her results in an impartial jury.  Virgil, 446 F.3d at 613.

And unlike actual bias, which is a fact issue, implied bias is a legal issue (a "mixed question of law and fact").  Fields v. Brown, 503 F.3d 755, 763, 770 (9th Cir. 2007) (en banc) ("implied bias is a mixed question of law and fact"); see also United States v. Abreu, 2023 WL 234766, at *1 (5th Cir. 2023) (unpublished) ("[W]e review the issue of implied bias de novo."); Burton, 948 F.2d at 1158 (whether juror's partiality may be presumed from circumstances is question of law, not fact finding to which appellate court must defer).  See also Smith v. Phillips, 455 U.S. 209, 222*

(1982) (O'Connor, J., concurring) ("In those extraordinary situations involving implied bias, state-court proceedings resulting in a finding of "no bias" are by definition inadequate to uncover the bias that the law conclusively presumes."). Therefore, this Court owes no deference under § 2254(e)(1) to the state courts' finding that Nickell was not "actually" biased.

The CCA unreasonably applied <u>Strickland</u>, <u>Mu'Min</u>, and <u>Adams</u>; and its decision was based on an unreasonable determination of the facts because counsel admitted that he should have challenged Nickell for cause or, if the challenge were denied, exercised a peremptory strike on her. No fairminded judge could conclude that the CCA's decision was not contrary to or did not involve an unreasonable application of clearly established federal law in light of the evidence presented.

The federal district court utterly failed to analyze this issue as the ineffective-assistance-of-counsel claim that appellant presented in state and federal court. It then failed to consider the doctrine of implied juror bias—in the context of the <u>Strickland</u> prejudice prong—which other courts have applied to grant relief. The state court unreasonably concluded that counsel did not perform deficiently. <u>See, e.g.</u>, <u>Virgil</u>, 446 F.3d at 611-13.

Counsel's failure to challenge for cause or exercise a peremptory strike on venire member Nickell, who was molested as a child and served on the jury, critically harmed appellant. Counsel admittedly did not have a strategic reason for

23

allowing her to serve on the jury, as he did not hear the trial court announce that she was molested as a child.  Had he known about her prior experience as a sexual abuse victim, he would have challenged her for cause or, if necessary, used a peremptory strike on her.  The harmful impact of her presence on the jury cannot be overstated.  This single instance of deficient performance alone was sufficient to cause prejudice to appellant.  See, e.g., Garza, 143 S.W.3d at 150-51.

The state court concluded that appellant cannot prove that the outcome of the proceeding would have been different had Nickell not served on the jury (ROA.5753).  But that is not the issue, as no one ever could show what outcome a *differently composed* jury would have reached.  Rather, the issue is that a victim of the same type of crime as the alleged offense served on the jury that convicted appellant, and she would not have served but for counsel's deficient performance.  The law is well-settled that her presence on the jury is sufficient to grant relief.[11]

A habeas appellant "need not show that counsel's deficient conduct more likely than not altered the outcome in the case."  Strickland, 466 U.S. at 693.  "The result of a proceeding can be rendered unreliable, and hence, the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the

---

[11] See Virgil, 446 F.3d at 613; Hunley, 975 F.2d at 319; McCorkle, 248 F.2d at 8; Eubanks, 591 F.2d at 517; Allsup, 566 F.2d at 71; Burton, 948 F.2d at 1159; Jackson, 395 F.2d at 617-18; Garza, 143 S.W.3d at 150-51; Winn, 871 S.W.2d at 762-63; Aланiz, 937 S.W.2d at 595-96; Shaver, 280 S.W.2d at 742; Delrio, 840 S.W.2d at 445; Reynolds, 294 S.W.2d at 110; Smithers, 2011 WL 1168423; Dietrich, 2016 WL 325284.

evidence to have determined the outcome." Id. at 694. Thus, appellant need show only "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The prejudice that appellant must prove is by less than a preponderance of the evidence because "[t]he reasonable-probability standard is not the same as, and should not be confused with, a requirement that a defendant prove by a preponderance of the evidence that but for error things would have been different." United States v. Dominguez Benitez, 542 U.S. 74, 82 n.9 (2004).

The essence of an ineffective assistance of counsel claim is that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). But for counsel's error, there is a reasonable probability that the jury would have concluded that appellant was not guilty *or deadlocked*.[12] Had the trial court overruled a challenge for cause to Nickell, there is a reasonable probability that any conviction would have been reversed on

---

[12] The Supreme Court has acknowledged that a mistrial resulting from a hung jury constitutes a "different outcome" for the purpose of post-conviction review. See Turner v. United States, 137 S.Ct. 1885, 1898 (2017) (Kagan, J., dissenting) (stating that all members of Supreme Court, including majority, "agree on the legal standard by which to assess the materiality of undisclosed evidence for purposes of applying the constitutional rule: Courts are to ask whether there is a 'reasonable probability' that disclosure of the evidence would have led to a different outcome – i.e., an acquittal *or hung jury* rather than a conviction") (emphasis added).

appeal.  Appellant's conviction is not worthy of confidence, and he is entitled to a new trial.

The state court's decision that any deficient performance did not result in prejudice was an unreasonable application of <u>Strickland</u> and was based on an unreasonable determination of the facts.  No fairminded judge could conclude that the state court decision was not contrary to or did not involve an unreasonable application of clearly established federal law.  Accordingly, appellant's conviction is not worthy of confidence, and he is entitled to a new trial.

## <u>CONCLUSION</u>

The Court should reverse the judgment of the district court, grant habeas corpus relief, and order the State to retry appellant or release him from custody.

Respectfully submitted,

*/s/ Josh Schaffer*

Josh Schaffer
State Bar No. 24037439

1021 Main, Suite 1440
Houston, Texas 77020
(713) 951-9555
(713) 951-9854 (facsimile)
josh@joshschafferlaw.com

Attorney for Appellant
DONNIE RAY PEARSON

26

## <u>CERTIFICATE OF SERVICE</u>

I certify that I electronically filed this document and served a copy on Jennifer Wren, Assistant Attorney General on January 21, 2025.

*/s/ Josh Schaffer*
Josh Schaffer

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B), as it contains 6,663 words, excluding the portions exempted by Rule 32(f).  It complies with the typeface requirements of Rule 32(a)(5) and the typestyle requirements of Rule 32(a)(6), as it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point typeface.

*/s/ Josh Schaffer*
Josh Schaffer

27